Curia, per

Richardson, J.
The general question of the case is, what did the coroner transfer to Dr. Irvine in selling to him the land of Henning % The answer is, he transferred the land, with all the rights annexed to it, according to the title of Henning ; and to the same extent as if Henning had, himself, given a release and quit-claim of all his right and title to the purchaser and his heirs. Such a release would, of course, transfer the use of the land, personally, or by the means of tenants, according to the rules and meaning of estates in land. But it is supposed that, as Henning had, before the sale, leased the land to Turpin & Powers, the rent is still due to Henning for the term of the lease — that is, for the space of eleven months after the coroner’s release to Dr. Irvine. The right of Turpin & Powers to keep possession for the term of their lease, cannot be questioned. All property is sold, by the sheriff or coroner, subject to the rights of strangers. The defendant alone loses his dominion over it, because that is transferred to the purchaser, and, cumonere, assuredly. But the plain *36 tiff’s case assuifies that Turpin Powers may not only keep possession, but must pay their rent to their former landlord, Henning; first, because they had rented the land of him; and secondly, because the rent had been growing-due to Henning for a month before the sale to Irvine, and therefore the court cannot apportion the rent of the subsequent eleven months to Irvine.
If the first reason were to prevail, and such a consequence were to follow, the purchaser of a landed estate with a numerous tenantry, might, with a little sagacity and much interestedness on the part of the former freeholder, be subject to the loss of both the'use of the lands and the rents, for an indefinite time. But in that case, what would be the meaning of the rights and title released to him by his purchase ? They would consist chiefly in the right to purchase of the tenants all their leases, or of the rents from the former freeholder. But the claim of the plaintiff, set up in the particular case, does not require the consideration of such extreme consequences. The proper question is, can the rent be apportioned between Irvine and Henning, bylaw? oris one of them entitled to the whole? The fact that Henning has received the month’s rent growing due at the time of the coroner’s sale, does not prove that he had a legal right to so much of the rent; and if Dr. Irvine had a right to the whole year’s rent, it does not follow that we apportion the rent, by awarding to him the eleven months rent to which he confines his demand, when he might have demanded twelve months rent. But as the Doctor confines his claim to eleven months only, this exposition of the ground taken in favor of Henning’s rights, is made, only to shew that the question of apportioning the rent arises from the assumption that Henning had a legal right to the rent, up to the sale; and that, if the Doctor had aright to that very rent, by virtue of his purchase, he cannot but have right to the subsequent rent of eleven months. For the argument, that if the Doctor had a right to the whole rent, he is, of course, entitled to the part he demands, is not lessened by the fact that he does" not require Turpin & Powers to pay him what they have already paid to Henning. It is easily conceived, then, that all the legal difficulty of dividing- an entire contract, or of ap *37 portioning the rent, may be as well directed against the assumption of Henning’s right to receive the first month’s rent, as against the Doctor’s right to receive that of the subsequent eleven months. Strictly speaking, the verdict does no more than settle the point that Henning, (or his assignee,) is entitled to no more rent. What Dr. Irvine is entitled to, may be yet an open question. But let it be granted, that Dr. Irvine has conceded the legal right of Henning to take the rent up to the sale — and this appears probable — still, may not the rent be apportioned between them'? The doctrine of rent is technical, but rational, and rent is often apportioned. It is reserved to him from whom the land proceeded, or his representatives, and is due for the use of the land, says Chancellor Kent, 3d vol. 463, quoting the established authorities. He says, “ If the landlord dies before the rent becomes due, it goes to the heir.” But if he dies after, it goes to the executor. This would indicate, by analogy, that in the instance before us, the whole year’s rent should pass to the freeholder, at the time the rent became due. Again he says, from Roll’s Abr. and 1 Saund. 205, “ If the tenant be evicted of a part of the land, the rent is apportionable,” 464. And here let me remark, that the difficulty of apportioning rent is on account of the tenant, not of the landlord. But in the case before us, the tenants are not only passive, between the claimants, but have taken a step towards the apportionment, by paying a part to Henning. Thus, then, the tenants have left the rent to be divided according to the rights of the successive freeholders, and present no objections of their own; while Henning has himself acceded to such partial payment of the rent, before it was due, under his lease to Turpin & Powers; or, at least, he has credit for so much, upon their account against him; and the plaintiff’s case assumes the fact.
But to return to the strict legal right to apportion rent among different freeholders. Chancellor Kent says, page 469, “ Though it was a principle of the common law, that an entire contract could not be apportioned, yet the apportionment was, under certain circumstances, allowed by the common law, either on severance of the land, (fee., or of the reversion.” “ A person has a right to sell the whole *38 or a part of his reversionary interest,” (fee. “ It may be necessary to divide his estate out on rent among his children, or to sell a part,” (fee. “ The rent passes, as an incident, to the purchaser of the reversion.” See, also, Gilbert on Rents, 163, and Co. Litt. 148; “ The rent is to be apportioned among the several owners of the reversion, or of the rent, according to the value of the land.” “And whenever the question becomes a litigated one, it is the business of the jury to apportion the rent according to the value of the land.” And he finally adds, “ The rent is also liable to' apportionment, by act of law, as in cases of descent and judicial sales ; (see Co. Lit. 224 ; 1 Roll. Abr. apportionment, Cro. Eliz. 742.) And assuredly sales by the coroner or sheriff carry the same incidents as judicial sales ; they are acts of law, and must be placed either upon this footing, or that of sales by the freeholder himself. And we have seen that apportionment is incident to both species of sales. Finally, upon the technical rule, so well urged by the plaintiff’s counsel, were I to. speculate upon the strict application of the common law, that entire contracts cannot be apportioned, I should incline to the opinion, that no part of the rent being due at the time of the sale, the purchaser became entitled to the whole rent at its maturity, as incident to his freehold. (But see statute 11 Geo. II, ch. 19, in 2d vol. Stat. at Large, 576, which may have introduced a modification of this strict principle.) At all events, it is unnecessary to press this argument to that extent, as the verdict merely acquits the defendants of further rent as due to Henning, or his assignee. The motion is dismissed.
O’Neall, Evans, Earle, Butler and Wardlaw, JJ. concurred.